IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VERNETTA KNIGHT,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                ) Civ. No.13-1141-SLR
                                        )
DELAWARE ECONOMIC                       )
DEVELOPMENT OFFICE, et al.,             )
                                        )
            Defendants.                 )

---

Vernetta Knight, Smyrna, Delaware. Pro se Plaintiff.

Lawrence W. Lewis and Michael F. McTaggart, Deputy Attorneys General, Delaware
Department of Justice, Wilmington, Delaware. Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: March  19 , 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Vernetta Knight ("plaintiff") proceeds pro se.[1] She filed this lawsuit alleging employment discrimination by reason of race pursuant to 42 U.S.C. § 2000e-5, and deprivation of her right to due process pursuant to 42 U.S.C. § 1983. (D.I. 1) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 22, 36) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will grant defendants' motion and will deny plaintiff's motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, who is black, was employed by defendant Delaware Economic Development Office ("DEDO") from June 2006 until she was terminated on March 6, 2012. (D.I. 38, A5) Defendant Sally Wojcieszyn ("Wojcieszyn") served as the director of human resources and administration for the DEDO. (D.I. 24, A49) On April 12, 2012, plaintiff filed a charge of discrimination. (D.I. 38, A9) Plaintiff received a notice of right to sue dated March 28, 2013, and the instant lawsuit was filed on June 26, 2013. (D.I. 1) She seeks injunctive relief (including reinstatement) and compensatory damages. (Id.)

Plaintiff's DEDO position was not a part of the State of Delaware merit system and the State's merit rules did not apply to her employment. (D.I. 24, A23) Plaintiff understood when she accepted the position that it was exempt from the State merit

---

[1] Plaintiff was represented by counsel when she initiated this lawsuit.

system and that she served at the pleasure of the governor and the DEDO director. (*Id.* at A6, A52)

Plaintiff has taken college courses, but does not have a college degree. (D.I. 38, A4) In plaintiff's initial job with the DEDO, she performed accounting duties. (D.I. 24, A7) Following her 2006-07 performance review, where she received a "needs improvement," plaintiff was relieved of most of her critical accounting duties and given other job duties, but retained her classification. (D.I. 24, A27-31) Plaintiff was moved to a receptionist position and held that position for approximately one year when, due to reorganization, she was moved to an administrative specialist III where she scheduled meetings and planned travel. (*Id.* at A7-8) Plaintiff's performance review for 2007-08 was "meets expectations."[2] (D.I. 24, A27-30) At the time of her termination, plaintiff held the administrative specialist III position. (D.I 38, A8)

In 2007, plaintiff complained to the human resources director about a hostile work environment based upon her race. (*Id.* at A37) At the time, plaintiff reported to Cheryl Lahman ("Lahman"). The matter was reported to Tom McCarthy ("McCarthy" and Kelly Ousman ("Ousman") and investigated by Ousman. (*Id.*) Ousman concluded that there "seemed to be an intimidating, offensive, and discriminatory environment that is fostered by her supervisor." (*Id.*)

During the summer of 2010, the DEDO approved plaintiff's request for leave under its Family Medical Leave Act ("FMLA") that she had requested as a result of a domestic violence incident and the premature birth of her son. (*Id.* at A46, A77) In

---

[2] The 2010 performance review does not provide any feedback. (D.I. 38, A43-45)

October 19, 2010, plaintiff was reprimanded for violating the State's credit card policy when she used the State credit card for personal use. (Id. at 32) The credit card transaction (for groceries) took place on October 3, 2010, and plaintiff repaid the amount on October 15, 2010. (D.I. 24, A32) Wojcieszyn testified that she believed plaintiff's credit card use was an intentional act because plaintiff was always having financial difficulties and she failed to immediately reimburse the State. (Id. at A83) Wojcieszyn testified that when other employees realized they had misused a State credit card, they would show up at her desk the next morning with a check or cash in hand, apologizing. (Id.) In the fall of 2011, plaintiff's attendance was at issue and, as a result, she met with the DEDO director who asked plaintiff to try to come to work on a regular basis. (Id. at A57)

Plaintiff testified that she spoke to Lahman in early January 2012 and advised Lahman she would undergo surgery in February. (D.I. 38 at A-11) Lahman told plaintiff to advise Wojcieszyn of the pending surgery because Lahman was retiring in February. (Id. at A8, A11) Following Lahman's retirement, plaintiff reported to Wojcieszyn. (Id. at A8) Plaintiff testified that she could have spoken to Wojcieszyn around the same time, in early January. (Id.) Wojcieszyn agreed that she and plaintiff spoke in January and testified that plaintiff indicated she would need to be off a couple of days for minor surgery. (D.I. 24, A54) Plaintiff and Wojcieszyn discussed plaintiff's sick and vacation leave balances, that plaintiff was low on leave, and that plaintiff might want to save her floating holidays for any unexpected absences. (Id.)

The DEDO's FMLA provides that its employees shall give not less than thirty days prior notice, or as quickly as the need is known, when leave is foreseeable based

3

upon planned medical treatment. (*Id.* at A67-70) According to Wojcieszyn, it is the employee's responsibility to notify human resources, or at least have some communication, to discuss whether the leave is a FMLA event so that the proper paperwork can be distributed to the employee. (*Id.* at A54) In addition, it is the employee's responsibility to insure the employee's part is completed on the FMLA paperwork and to give the FMLA paperwork to the physician's office. (*Id.* at 54-55).

On February 3, 2012, plaintiff signed an agreement of elective weight loss surgery with her surgeon's office. (*Id.* at A33) Plaintiff was told by her physician that the recovery period could take "anywhere between a week or approximately two to four weeks." (D.I. 38 at A12) A memo from plaintiff's physician, addressed "to whom it may concern" and dated February 29, 2012, states, "a 2 week recuperation time is anticipated, with a more exact return to work[] date to be determined following the actual surgery." (D.I. 24, A64) Plaintiff spoke to Wojcieszyn sometime in February to let her know that the surgery would take place on Wednesday, February 23, 2012, of the expected recovery time, and that she would be out for two days.[3] (D.I. 38, A11-12) Plaintiff advised Wojcieszyn that she would telephone her on February 27, 2012, to let her know how she felt. (D.I. 38 at A11) Plaintiff did not plan on taking off for at least a week because the recovery time depended upon the person, which is why she told Wojcieszyn she would call the following Monday, February 27th. (*Id.*)

---

[3] Plaintiff is not sure of the exact date she spoke to Wojcieszyn, but she told Wojcieszyn of the expected recovery time sometime between February 1 and the date of the surgery. (D.I. 38, A12)

4

The surgery took place as scheduled and, on Monday, February 27, 2012, plaintiff called Wojcieszyn and indicated that she might need another day. (D.I. 38, A12) Wojcieszyn directed that a release form from plaintiff's physician was needed for plaintiff to return to work. (*Id.*) Wojcieszyn faxed, and then emailed, a FMLA form to plaintiff's physician on Wednesday, February 29, 2012. (*Id.* at A13) Wojcieszyn advised plaintiff's physician that the FMLA paperwork was due back by March 14, 2012. (D.I. 38, A55)

On Thursday, March 1, 2012, plaintiff called her physician and requested a return to work date of Tuesday, March 6, 2012. (D.I. 38, A56) Medical records indicate that plaintiff called back on March 5, 2012, because she had not heard from her physician. (*Id.*) On the same date, a notation was made by Wojcieszyn that the correct email was used to send the FMLA paperwork. (*Id.* at A55) Also on March 5, 2012, plaintiff's physician faxed a return to work slip for plaintiff to return to work on March 6, 2012. (D.I. 24, A35) The physician's office unsuccessfully tried to contact plaintiff, but it could not reach her because it had an old telephone number in the system. (D.I. 38, A63) Plaintiff believes that she spoke to the physician's office on March 6, 2013 and was told that she was approved to return to work. (*Id.* at A13) Medical records confirm that plaintiff called back on Tuesday (i.e., March 6, 2012). (*Id.* at A56)

On the morning of March 6, 2012, plaintiff telephoned Wojcieszyn. (D.I. 24, A59) Wojcieszyn testified that plaintiff telephoned because a co-worker had texted plaintiff and wanted to know where she was. (D.I. 24, A60) In turn, plaintiff called Wojcieszyn. (*Id.*) Wojcieszyn testified that it sounded like plaintiff was on a cell phone in a car. (*Id.*) Wojcieszyn asked plaintiff why she was not at work and advised plaintiff

5

that she had received plaintiff's return to work notice with a return to work date of March 6, 2012, and that plaintiff could return to work that day. (D.I. 24, A14; D.I. 38, A14) According to Wojcieszyn, plaintiff responded that she did not know that she could return to work and, at that point, Wojcieszyn indicated that she would get back to plaintiff. (*Id.*) Plaintiff testified that she spoke to her physician's office on March 5 or 6, 2012 and was told she was approved to return to work, but plaintiff needed the form faxed to DEDO. (D.I. 38, A13) Plaintiff asked the physician's office why she was not informed the note was faxed, and then asked if the form could be redone so that she could return on March 7, 2014. (*Id.*) Plaintiff made this request because "no one knew [she] had a release form until the 6th sometime." (*Id.*) Plaintiff testified that when Wojcieszyn told her to return to work she was not in the area because she was driving to the physician's office to obtain the release form for her to return to work on March 7, 2012.[4] (D.I. 38, A14) Plaintiff testified that she wanted to change the return to work date to March 7, 2012 because she knew that, if she did not have the paperwork in order, there was a chance of possibly being terminated. (*Id.*) That evening, Wojcieszyn telephoned plaintiff and left a voice message advising plaintiff that she had been placed on leave without pay pending further investigation. (D.I. 24, A52)

---

[4] A medical note states that plaintiff telephoned and stated that she was embarrassed because she reported to work but was sent home and she could not work without the return to work note. (D.I. 38, A56) When asked if she could return to work that day, plaintiff replied that she was about an hour away, she did not have any gas money, and she was waiting for her sister to send her some money. (*Id.*) The medical note goes on to state that plaintiff's employer call the physician's office, indicated that it had received the return to work slip for plaintiff to return on March 6, 2012, and that plaintiff did not come into work. (*Id.*) Plaintiff testified that she personally drove to the physician's office on March 6, 2012, to retrieve a revised slip to return to work on March 7, 2012. (*Id.* at A14)

6

The decision to terminate plaintiff was made on March 6, 2012, by the DEDO director, deputy director, and Wojcieszyn. (*Id.* at A52) That day, Wojcieszyn authored a termination letter that plaintiff's position with the DEDO was terminated effective March 6, 2012. (D.I. 24, A51) Plaintiff did not receive a copy of the termination letter until March 20, 2012, and she believed that she was on leave without pay. (D.I. 24, A51-52; D.I. 38, A15) Wojcieszyn explained there was a two-week delay in advising plaintiff of her termination because the DEDO cabinet secretary was on vacation; and she wanted to wait for the cabinet secretary's return to show him the draft and receive input on the draft termination letter from the DEDO deputy director. (D.I. 24, A52) In addition, Wojcieszyn left for vacation on March 12, 2012. (*Id.*) The DEDO director reviewed the termination letter between March 7 and March 19, 2012. (*Id.* at A80)

Even though the March 6th termination letter had been drafted, according to Wojcieszyn, plaintiff was not yet terminated on that date because more documentation was needed.[5] (D.I. 24, A52) In addition, Wojcieszyn needed to check with the Labor Relations and Office of Management and Budget ("Labor Relations"). (*Id.*) Wojcieszyn was told by Labor Relations that there were no issues with regard to the DEDO's right to terminate plaintiff because DEDO employees serve at the pleasure of the governor and cabinet secretary, and employees may be terminated without any type of hearing. (*Id.* at A52-53)

---

[5] Wojcieszyn testified that she believed plaintiff was moving during the time she was off work based upon: (1) recovered work emails that indicated plaintiff's landlord wanted her to move her belongings during the time period; (2) plaintiff provided a new address; (3) plaintiff was difficult to contact; and (3) plaintiff's telephone number changed. (D.I. 24, A57)

7

The termination letter indicates that plaintiff was terminated for: (1) failure to return to work on March 6, 2012; (2) being misleading and dishonest about the time needed off for surgery; (3) failure to follow the FMLA policy; (4) poor attendance record; and (5) the warning regarding misuse of her State credit card. (D.I. 38, A57) Plaintiff is currently employed by Delaware State University as a financial administrator. (D.I. 38, A2)

Plaintiff refers to several individuals with whom she compares her treatment in the workplace. Veronica Richardson ("Richardson") and Beverly Ennis ("Ennis"), both of whom are white, were employed in the same position as plaintiff but received higher compensation. (D.I. 24, A58) Richardson had fifteen years of experience and an associate's degree when she began her employment with the DEDO. (Id.) Ennis had twenty-nine years of experience and a college degree when she began her employment with the DEDO. (Id.) The Office of Management and Budget considers education and experience in determining pay/grade classification. (Id. at A59)

Plaintiff testified that Elaine Rockwell ("Rockwell"), who is white, was approved for FMLA after she sustained a back injury. (D.I. 24, A16) Wojcieszyn testified that Rockwell sustained a back injury over the weekend, she called in on a Monday morning, asked for FMLA papers immediately, and the FMLA request was approved.[6] (Id. at A60)

---

[6] The record contains references to other comparators. Plaintiff, however, only references comparators Richardson, Ennis, and Rockwell in her motion for summary judgment.

8

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the

9

existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

Plaintiff alleges race discrimination in violation of 42 U.S.C. § 2000e, et seq. She asserts constitutional violations pursuant to 42 U.S.C. § 1983.

### A.    Title VII

Defendants move for summary judgment on the grounds that plaintiff has not established any claim of race discrimination with respect to the conditions of her termination, her salary, or her request for leave under the FMLA. Plaintiff moves for summary judgment on the grounds that she was discriminated against, and ultimately terminated, on the basis of race.

Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

A plaintiff may prove race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because there is no direct evidence of discrimination, the court turns to the familiar *McDonnell Douglas* burden-shifting framework. Under this framework, plaintiff must first establish a prima facie case of race discrimination by proving that: (1) she is a member of a protected class; (2) she suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing her prima facie case, the burden shifts to defendant employer to proffer "legitimate non-discriminatory" reason for its actions. *See Reeves*, 530 U.S. at 142. If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)

11

(citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. 2006) (unpublished) (quoting *Fuentes*, 32 F.3d at 764 (internal citations and other citations omitted).

Defendants argue that the DEDO properly terminated plaintiff and that the employment action, the salary differential, and the review of plaintiff's claim for leave under the FMLA were not the results of race discrimination. Defendants further argue that the DEDO has provided legitimate, nondiscriminatory reasons for dismissing plaintiff. Plaintiff argues that she was terminated based upon her race, that white employees received a higher compensation for the same position, and that she followed the procedures for approval of leave under the FMLA, yet it was not approved, while the DEDO approved leave for a white employee after the fact of her incident.

To make a comparison of her treatment to that of employees outside her protected class for purposes of a Title VII claim, plaintiff must show that she and the employees are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (unpublished) (citations omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *Houston*, 355 F. App'x at 654. In a severance case, the relevant factors may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separation. *Id.* at 655 (citing *McGuinness v.*

12

*Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated to a colleague who received more money in severance where the two employees "held positions of roughly equivalent rank . . . were fired at roughly the same time, [and] the decisions with respect to the severance were both made at the highest levels of the company").

Plaintiff was advised that she was terminated effective March 6, 2012, based on numerous factors, including: (1) her failure to return to work on March 6, 2012; (2) being misleading and dishonest about the time needed off for surgery; (3) failure to follow the FMLA policy; (4) poor attendance record; and (5) the warning regarding misuse of her State credit card. The record reflects that none of the reasons proffered for plaintiff's discharge are the result of race discrimination.

More specifically, the record reflects that plaintiff did not return to work on March 6, 2012, even though she was aware that her physician had submitted a return to work form for that day. In addition, plaintiff initially only sought two days off from work despite her physician's advising her that she would have at least a two week recovery. Plaintiff failed to follow the time requisites for leave under FMLA with respect to an elective medical procedure. As to her attendance record, plaintiff notes that she was absent in 2008 and 2010 for the births of her sons. She argues that, because there was mention of her absenteeism in December 2010, it is unfair to consider this because the plan was never completed due to the domestic violence issue and birth of her second son. The record reflects, however, that plaintiff was counseled in 2011 with respect to her poor attendance. As to the credit card issue, plaintiff argues in a conclusory manner that she was discriminated against when she was reprimanded for misusing a State credit card

because Wojcieszyn believed that plaintiff's misuse of the credit card was intentional as opposed to other unnamed individuals whose use was unintentional The record reflects that plaintiff did not make an immediate reimbursement after she used the card unlike other individuals who did. Finally, plaintiff makes reference to her 2007 complaint regarding racially insensitive remarks. The record reflects that her complaints in 2007 were addressed, the complaints occurred in a time-frame far removed from when plaintiff's employment was terminated, and the complaints were directed towards plaintiff's previous supervisor who had retired prior to plaintiff's termination.

While plaintiff has established some elements of a prima facie case of race discrimination, she has failed to establish that the reasons for the DEDO's decision to terminate her employment were related to discrimination. Instead, the record reflects that the DEDO took the actions it did based upon workplace incidents and actions of plaintiff. After viewing the evidence of record, the court finds that plaintiff failed to point to evidence that the DEDO's decision to terminate her employment were motivated by intentional, race-based discrimination.

Assuming arguendo that plaintiff had established a prima facie case of discrimination, defendants provided legitimate, nondiscriminatory reasons for the DEDO's decision to terminate plaintiff. There is nothing before the court that contradicts the proffered reason for plaintiff's termination. Nor are defendants' proffered reasons for the actions taken weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. See Sarullo v. United States Postal Service, 352 F.3d 789, 800 (3d Cir. 2003). Even construing the evidence in the light most favorable to plaintiff, she has not provided evidence from which a fact finder

14

could either disbelieve defendants' articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment actions.

With respect to the disparity in salary between plaintiff and two white employees, the court finds that plaintiff has failed to establish discrimination by reason of race. In 2011, plaintiff was paid $36,000, Ennis was paid $49,124, and Richardson was paid $42,000. Both Richardson and Ennis have college degrees and, while plaintiff has taken college courses, she has not obtained a college degree. In addition, both Richardson and Ennis have considerably more work experience, one with fifteen years and the other with twenty-nine years, while plaintiff had six years of experience. Finally, the record reflects that after plaintiff's 2006-07 evaluation, she was relieved of all accounting duties, but kept the same classification and pay. Later, plaintiff's duties changed due to reorganization. Ennis and Richardson were either reclassified or promoted which resulted in an increase in salary. Despite the difference in salaries, there is no evidence of record that the difference is based upon the race of plaintiff or her comparators.

Finally, plaintiff alleges that the DEDO discriminated against her on the basis of race because her FMLA requests were subjected to greater scrutiny than white employees, and white employees were routinely granted leave with little to no scrutiny. In her motion for summary judgment, plaintiff states that she followed the State's requisites for a FMLA request and that employers cannot use the taking of FMLA leave as a negative factor in employment actions. As a comparator, plaintiff refers to Rockwell, a white employee, who was approved for leave under the FMLA after the fact of her incident.

15

The record reflects that Rockwell sustained a back injury over the weekend and, on the following Monday, called and indicated that she needed FMLA papers emailed to her immediately. Conversely, plaintiff had advance notice of an elective medical procedure and did not give thirty days prior notice as is required when leave is foreseeable based upon planned medical treatment. Based upon the foregoing, the court cannot say that Rockwell and plaintiff were similarly situated. The record does not reflect that, with respect to leave under the FMLA, plaintiff was treated differently on the basis of race.[7]

To the extent that plaintiff attempts to raise a claim under the "self-care" provision of the FMLA, it is barred by the Eleventh Amendment. *See Coleman v. Court of Appeals of Maryland,* __U.S. __, 132 S.Ct. 1327 (2012); *see also Banks v. Court of Common Please FJD,* 342 F. App'x 818, 821 (3d Cir. 2009) (unpublished) ("[P]rivate suits for damages may not be brought against states for alleged violations of the FMLA, which arise under the Act's self-care provision."). To the extent that plaintiff seeks injunctive relief (i.e., reinstatement) under the FMLA, it too is barred by the Eleventh Amendment inasmuch as plaintiff did not raise any claims against state officials in their official capacities. *See Banks,* 342 F. App'x at n.1, n.2. Hence, she cannot overcome sovereign immunity under *Ex parte Young,* 209 U.S. 123 (1908), as plaintiff named only the DEDO and Wojcieszyn in her individual capacity.

No reasonable jury could find for plaintiff on her Title VII claims. Accordingly, the

---

[7] Indeed, the record reflects that, during the summer of 2010, plaintiff's requests for leave under the FMLA were approved. (D.I. 38, A46)

16

court will grant defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment on the Title VII claims.

## B.    Due Process, 42 U.S.C. § 1983

Count II of the complaint alleges that Wojcieszyn did not provide plaintiff her due process rights during the termination process. Defendants move for summary judgment on the due process issue. Plaintiff does not mention the due process issue in her motion for summary judgment.

As noted, the record reflects that, when plaintiff was hired, she was informed that the position was not a part of the State's merit system and that the merit rules did not apply to her employment with the DEDO. Plaintiff was aware that her position with the DEDO was exempt from the State merit system.

Delaware's merit system statute provides for a civil service-type system for "classified employees." See Del. Op. Att'y Gen. 88-I027, 1988 WL 383449 (Nov. 2, 1988). All State employees except those excluded by 29 Del. C. § 5903(1)-(23) or a specific statute, such as 29 Del. C. § 5009(a) which excludes the director and all employees of the Delaware Economic Development Office, are subject to the merit system statute. Id. Those not covered by the merit system commonly are called "exempt employees." Id. An exempt employee cannot lay claim to the protections of the merit system statute of Chapter 59 of the Delaware Code and the merit rules. See State Dep't Natural Res. & Envtl. Control v. Murphy, 2001 WL 282817, at *5 (Del. Super. Mar. 19, 2001).

Plaintiff was an exempt employee during the time she was employed by the DEDO. As such, Wojcieszyn was not obliged to provide plaintiff with due process

17

protections prior to her termination. No reasonable jury could find in favor of plaintiff on the due process issue. Therefore, the court will grant defendants' motion for summary judgment on the due process issue raised pursuant to 42 U.S.C. § 1983.

## V. CONCLUSION

For the above reasons, the court will grant defendants' motion for summary judgment (D.I. 22) and will deny plaintiff's motion for summary judgment (D.I. 36).

A separate order shall issue.